(No. 10957.—Judgment reversed.)

ADRIAN E. COOPER *et al.* Defendants in Error, *vs.* THE BROWN-DANSKIN COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

CONTRACTS—*contract respecting the disposal of stock of goods taken in exchange for land, construed.* Where a stock of general merchandise of unknown value is taken in part payment for land, and a supplemental contract is made whereby the first party, the owner of the land, agrees to sell the goods for the second party, credit the latter with $5000 on the purchase price of the land and pay him two-thirds of the gross proceeds of such sale until the second party has received the difference between $5000 and the amount of an inventory of the goods at cost price, the second party is entitled to receive only such gross two-thirds of the proceeds, even though it does not amount to the difference between the $5000 and the amount of the inventory.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. F. W. BURTON, Judge, presiding.

B. O. WILLARD, and JAMES B. SEARCY, for plaintiff in error.

EDWARD C. KNOTTS, and VICTOR HEMPHILL, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendants in error, Adrian E. Cooper and Charles Cooper, partners under the firm name of Cooper Bros., brought an action of assumpsit in the circuit court of Ma-

coupin county against plaintiff in error, the Brown-Danskin Company, a corporation, and appealed from a judgment in favor of the defendant to the Appellate Court 'for the Third District, which reversed the judgment of the circuit court and rendered a judgment in favor of the defendants in error for $4419.67. Upon the petition of the defendant a writ of *certiorari* was granted, and the record has been brought before us for review.

On August 5, 1911, the parties entered into a written contract whereby the Brown-Danskin Company sold to Cooper Bros. 320 acres of land in Traill county, North Dakota, for $19,200, of which amount $10,700 was represented by mortgages on the property, $3500 by a house and lot in Palmyra, in Macoupin county, which Cooper Bros. agreed to convey, and $5000 by a general stock of goods owned by Cooper Bros. which was estimated to amount to $10,000 and which Cooper Bros. were to reduce to $7500 by December 1, 1911, when the transaction was to be closed by conveyances, and the Brown-Danskin Company was to pay Cooper Bros. the difference between $5000 and the $7500 to which the stock was to be reduced. Cooper Bros. were unable to reduce the stock to $7500 by December 1, and the Brown-Danskin Company desiring to obtain possession of the stock before that date, a supplemental agreement was entered into in regard to the stock of goods. The controversy between the parties concerns the stock of goods and must be determined by a construction of the agreements in relation to it, all other provisions of the contract having been complied with by the respective parties.

The original contract provided in regard to the goods, that Cooper Bros., in addition to the assumption of the mortgages, should convey the Palmyra property, and "also $5000 in a general stock of goods at cost price and fixtures at present worth, not exceeding $400, same being at present a stock of about $10,000, which second party is to reduce to at least $7500 by December 1, 1911, if possible, and

soon as this is done first party to take charge and pay second party proceeds at cost price of goods down to $5000 worth of goods. Invoice to take place when first party takes charge." The supplemental contract of November 8, 1911, is as follows:

"This agreement, made and entered into by and between the Brown-Danskin Company, party of the first part, and Adrian E. Cooper, party of the second part:

"*Witnesseth,* That whereas, on the 5th day of August, 1911, said parties entered into an agreement for the exchange of certain lands in North Dakota for a dwelling house and stock of goods in Palmyra, Illinois; and whereas said stock has not been reduced as provided in said contract: Now this agreement is for the purpose of re-adjusting the agreement relative to the disposal of said stock of goods, and in consideration of said stock of goods which has this day been conveyed to Stewart J. Danskin by Cooper Bros., the said first party hereby agrees to pay second party two-thirds of all money received on the sale of said stock until second party has received enough cash to amount to the difference between five thousand ($5000) and the amount of invoice which is to be made under original contract, for the purpose of paying second party cash for all above $5000, it being agreed that enough money out of the second $1000 to be paid second party shall be used to pay mortgage and interest now against dwelling house being traded first party, and that second party shall have credit on purchase price of North Dakota land for the $5000 above mentioned."

At the time the latter agreement was executed the goods were transferred by a bill of sale and the Brown-Danskin Company took possession and immediately proceeded to dispose of them by sales at auction as well as in the ordinary retail way. An inventory of the stock was taken, which was not completed until November 18, which showed the cost price of the goods and the fixtures to be $14,454.40. The stock was finally disposed of on January 29, 1912. During the progress of the sale the Brown-Danskin Company bought new goods to the amount of $611.11, which were sold with the original stock, and the gross receipts from all the sales were divided daily between Cooper Bros. and the Brown-Danskin Company, two-thirds to the former and one-third to the latter. The Brown-Danskin Company

paid all the expenses of the sale, which amounted to about $7500. Of this amount Cooper Bros. received $5034.73 as their two-thirds, and the Brown-Danskin Company's net receipts, after payment of expenses, were $246.08. Cooper Bros. also received a credit of $5000 on the purchase price of the land on account of the goods. In October, 1912, Cooper Bros. claimed of the Brown-Danskin Company the sum of $4419.67, being the amount which the inventory exceeded the $5034.73 cash and $5000 credit which they had received on account of the goods, and upon the failure of the Brown-Danskin Company to pay, brought this suit. The circuit court held that the Brown-Danskin Company was not bound by the contract to pay this amount and the Appellate Court held that it was, and this question must be determined by a construction of the contract of November 8, 1911.

The intention of the parties as expressed in the original contract, to settle on December 1 by the transfer of the goods to the Brown-Danskin Company, which was to pay for them by the credit for $5000 and the payment of not to exceed $2500 in cash, was abandoned and the provisions of the new contract were substituted. By this contract the Brown-Danskin Company agreed to pay to Cooper Bros. two-thirds of all money received on the sale of the stock and no other amount, and it agreed to pay this amount only until Cooper Bros. had received the difference between the $5000 for which they were to have credit on the purchase price of the land and the amount of the invoice. Neither party knew what the invoice would amount to or what amount would be produced by a sale of the goods. Since the stock had been estimated at $10,000 when the contract was made in August and since Cooper Bros. had been reducing it for three months after that time, it is reasonable to presume that the parties supposed that two-thirds of the amount of the sales would amount to more than the differ-

ence between $5000 and the inventory,—that is, that $5000 was more than one-third of the amount that would be produced from the sale,—and that it was for this reason that Cooper Bros. were willing to accept two-thirds of the gross amount of the sales, not exceeding the amount of the inventory, including their $5000 credit, and that the Brown-Danskin Company limited the amount of its payment to the difference between the $5000 and the inventory. The purpose was expressed to pay Cooper Bros. in cash, out of the proceeds of the sale, the difference between the $5000 credit and the amount of the inventory, and this purpose would have been accomplished if the inventory had not exceeded the estimated amount of $10,000 or if the goods had sold for the prices at which they were inventoried. The contingency that the inventory might greatly exceed the estimate and the goods sell for much less than the inventoried price was not contemplated or provided for in the agreement. The discrepancy between the inventory and the sale is not accounted for, but there is no claim, either in pleading or evidence, that the inventory was not fairly made or that the sale was not fairly and prudently conducted so as to produce the full value of the stock. The only question is upon the construction of the contract, and, as has been said, it provides only for the payment of two-thirds of all money received on the sale of the stock. The defendants in error have received that amount and the plaintiff in error was not liable under the contract to pay more.

The judgment of the Appellate Court will be reversed and that of the circuit court affirmed.

*Judgment reversed.*